AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

United States of America
v.
Robert Armstrong

*Defendant(s)*

Case No. 26- 7083 (EAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ______ in the county of Gloucester in the ______ District of New Jersey, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC §§ 1341 and 1344 | Mail fraud and bank fraud |

See Attachment A

This criminal complaint is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

Michael A Marro Jr.
*Complainant's signature*

Michael A. Marro, Jr., U.S. Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone .

Date: 10/30/2026

*Judge's signature*

City and state: Camden, New Jersey

Elizabeth A. Pascal, United States Magistrate Judge
*Printed name and title*

# CONTENTS APPROVED

## UNITED STATES ATTORNEY

By: ______________________

Jason M. Richardson, AUSA
Sara A. Aliabadi, AUSA
Date: October 28, 2026

**<u>Attachment A</u>**

<u>Count 1</u>
(Bank Fraud)

From in or about September 2025 through in or about November 2025, in Gloucester County, in the District of New Jersey, and elsewhere, the defendant,

ROBERT ARMSTRONG,

did knowingly and intentionally devise a scheme and artifice to defraud a financial institution, Bank 1, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of Bank 1, by means of materially false and fraudulent pretenses, representations, and promises, as described in Attachment B.

In violation of Title 18, United States Code Section 1344.

<u>Count 2</u>
(Mail Fraud)

From in or about March 2026 through in or about August 2026, in Gloucester County, in the District of New Jersey, and elsewhere, the defendant,

ROBERT ARMSTRONG

did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly and with fraudulent intent place or caused to be deposited in a post office and authorized depository for mail to be delivered by the United States Postal Service and any private or commercial interstate carrier certain mail matters as described in Attachment B.

In violation of Title 18, United States Code Section 1341.

## ATTACHMENT B

I, Michael A. Marro, Jr., am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have knowledge of the facts set forth below as a result of my participation in this investigation as well as from my review of reports from, and discussions with, other law enforcement personnel. Where statements of others are related herein, they are related in substance and in part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

## OVERVIEW

1. Defendant Robert Armstrong devised and executed a scheme to fraudulently obtain money from a financial institution, Financial Institution 1; the State of Texas; and various school districts around the country. In this scheme, Armstrong pretended to be the representative of a company, Financial Institution 1, that was owed millions of dollars in disbursements by a hedge fund. Financial Institution 1 did not claim or receive all the money that it was owed, and the unclaimed money ultimately was turned over to the State of Texas. Subsequently, Armstrong submitted various documents, including online forms and paper documents sent through the United States Postal Service, in order to falsely claim that the money was his, and ultimately, to divert Financial Institution 1's money so that he could use it himself.

### A. Background

2. Financial Institution 1 is a foreign institution that offers corporate banking, investment banking, trading, and wealth management services, with global office locations including an office in Dallas, Texas. In 2003, Financial Institution 1 invested in a hedge fund that packaged residential mortgages together into securities. As an investor in the hedge fund, Financial Institution 1 was a bondholder and received periodic principal and/or interest payments from the hedge fund.

3. Bank 1 is a federally insured "financial institution" within the meaning of Title 18, United States Code, Section 20. At all times relevant to this complaint, Bank 1 had a subsidiary that managed trusts, served as the trustee for the hedge fund, and distributed payments to the hedge fund's bondholders, including Financial Institution 1, through its parent company, Bank 1.

4. In 2012, Bank 1's payments to Financial Institution 1 started to be returned to Bank 1 as undeliverable. After multiple failed attempts to distribute

payments to Financial Institution 1, Bank 1 declared that the account for Financial Institution 1 was "lost." However, Bank 1, on behalf of the Trust, continued to collect the money that the hedge fund owed to Financial Institution 1. After declaring the account lost, Bank 1 would hold onto the funds that were owed to Financial Institution 1 until Financial Institution 1 contacted Bank 1 to collect. At this time, Financial Institution 1 was the only investor left in the hedge fund.

5. After three years of Bank 1 collecting money from the hedge fund that was owed to Financial Institution 1, and the money not being claimed by Financial Institution 1, Bank 1 was required to report to the state of the last address on file for Financial Institution 1 that Bank 1 was still collecting and holding funds on behalf of Financial Institution 1. Financial Institution 1's last known address on file with Bank 1 was in the State of Texas; therefore, all funds collected and owed to Financial Institution 1 from the investment fund after three years are considered state escheatment funds[1] and transferred to the State of Texas. Therefore, Bank 1 holds funds in an internal account for Financial Institution 1 from the time the account is declared lost and three years after the declaration. After the three-year period, all monies owed to Financial Institution 1 are transferred from Bank 1 to the State of Texas.

## B. Bank Fraud

### 1. Armstrong's Fraudulent Activity Related to Financial Institution 1's Funds

6. Armstrong falsely represented to Bank 1 that he was authorized by Financial Institution 1 to recover funds on behalf of Financial Institution 1. Armstrong did this by submitting or causing to be submitted various records to Bank 1 via United States Postal Service delivery, as follows:

a. On September 24, 2025, a postal envelope was sent via United States Postal Service, originating in Blackwood, New Jersey, from Asset Recovery Service at a location in Blackwood, New Jersey 08012. This location is the address for a U.S. Post Office where Armstrong has a Post Office Box in the name of Asset Recovery ("Armstrong Post Office Box"). The postal envelope was sent to Bank 1 in Pittsburgh, Pennsylvania. Included in the mailing were the following:

---

[1] State escheatment funds are dormant financial assets or property transferred to state custody after a period of inactivity. The state holds these funds in trust until the rightful owner or heir claims them.

i. A purported Texas Limited (Special) Power of Attorney form, appointing Robert Armstrong as an agent of Financial Institution 1, at an address in Dallas, Texas 75206 ("Dallas Address"), and granting Armstrong authority to act on behalf of Financial Institution 1 to "assist in the facilitation of claim #26356691 with the State of Texas Unclaimed Property Division." The Power of Attorney was dated September 22, 2025, and the signature appears to have been signed by Armstrong.[2]

ii. A Texas Unclaimed Property of Attorney Claim Form, identifying Robert Armstrong at the Dallas Address as the claimant. The claim form included Armstrong's contact information, such as a telephone number that previously was used on a business bank account that was opened by Armstrong at his residence, as well as Armstrong's social security number.

iii. A letter dated September 24, 2025, requesting that mail be sent to Asset Recovery Services at the Armstrong Post Office Box.. In addition, the letter provided a contact email address. The account corresponding to the email address was associated with a registered date of birth that matches Armstrong's date of birth and a phone number associated with Armstrong. The letter has a typed signature of Robert Armstrong.

b. On October 28, 2025, a second envelope was sent via United States Postal Service from the Armstrong Post Office Box to Bank 1 in Pittsburgh, Pennsylvania. Armstrong submitted, among other documents, a "Consent to Action Without Meeting the Sole Director" document dated October 25, 2025. The document purported to appoint and authorize Robert Armstrong: 1) To assist in the recovery of Unclaimed Property Proceeds remitted to the State of Texas Unclaimed Property Division; 2) To assist in the liquidation of said bonds so no further escheatment[3] occurs; and 3) To facilitate a change of address from Financial Institution 1 at its location in Houston Texas to Financial Institution 1 at the Dallas Address. The document was signed by Robert Armstrong.

7. During the investigation, I researched the Dallas Address that Armstrong had listed on various documents as being a contact address for Financial

---

[2] Similar signatures appear on the Fulton Bank account ending in 1977 with signatory as Robert S Armstrong and on PNC Bank account ending in 9836 with signatory as Robert S Armstrong.

[3] Escheatment is the legal process where a financial institution or company transfers abandoned or unclaimed property to the state government.

Institution 1. I did this in order to determine if this address was the site of a Financial Institution 1 location.

8. I learned that the Dallas Address was in an industrial area of Dallas, Texas. I further learned through a review of bank records that, as part of Armstrong's scheme, he utilized an online virtual address and mailbox service known as "PhysicalAddress.com." PhysicalAddress.com is a legitimate business that sets up virtual business and personal addresses and accepts mail at a physical location on behalf of their customers for a fee. PhysicalAddress.com forwards any mail that is received to a location that the customer identifies. PhysicalAddress.com also will open and forward mail. On January 7, 2024, Armstrong set up a location at the Dallas Address.

9. Based on Armstrong's false and fraudulent representations and submissions, Bank 1 distributed a cashier check number ending in 9729 from the dormant (that is, collected but not dispersed) Financial Institution 1 funds that had not yet met the three-year-old threshold of inactivity to be transferred to the State of Texas. The cashier's check was made payable to Financial Institution 1, at the Dallas Address, in the amount of $2,806,524.476 with a check date of "Not Valid before November 10, 2025."

### 2. Armstrong Forms Fraudulent Financial Institution 1-like Company and Opens a Bank Account to Deposit Fraudulently Obtained Proceeds.

10. According to a State of New Jersey Certificate of Formation, a company with a name similar to Financial Institution 1 ("Fraudulent Financial Institution 1") was formed on November 13, 2025. The registered agent was R. S. Armstrong and managing member was Robert Armstrong, at Armstrong's residence in Turnersville, New Jersey ("Armstrong's Residence"). The main business address was also listed as Armstrong's Residence.

11. On November 17, 2025, Armstrong opened a business checking account ending in 9836 in the name of Fraudulent Financial Institution 1 at Bank 2. Bank 2 is a federally insured "financial institution" within the meaning of Title 18, United States Code, Section 20. Armstrong was the sole signatory on this account, and the account address was Armstrong's Residence. Armstrong, as part of the account opening, signed an affidavit dated November 17, 2025, in which he stated that he resided at Armstrong's Residence.

12. On November 19, 2025, Armstrong deposited Bank 1 cashier check # ending in 9729 into the Fraudulent Financial Institution 1 bank account at Bank 2

ending in 9836. Below are images taken from the surveillance video of Armstrong making the deposit at Bank 2's branch location in Sewell, New Jersey.







13. Bank 2 returned the deposited funds to Bank 1 because the funds could not be verified.

**C. Armstrong's attempts to obtain the escheatment funds from the State of Texas**

14. According to records from the State of Texas Unclaimed Property Division, Armstrong submitted, or caused to be submitted, online claim forms through the State of Texas website in an attempt to claim the funds that Texas was holding on behalf of Financial Institution 1.

15. For example, on September 18, 2025, a claim was submitted through the website, which was assigned a claim number ending in 691 ("Claim 691"). According to Claim 691, which was false, the claimant was entitled to $9,251,641.71 of Financial Institution 1's unclaimed funds.

16. When submitting Claim 691 to the State of Texas, Armstrong did not use his own name on the online claim form. Instead, Armstrong made the claim using the name of Individual 1. I have learned that Individual 1 was the President and Chief Financial Officer of Financial Institution 1 until he/she left the bank in June 2026.

17. When submitting Claim 691 to the State of Texas, Armstrong listed the Dallas Address as a contact address. He listed a contact email address that was registered to "Robert Armstrong," was associated with Armstrong's own date of birth, and was associated with the Armstrong Residence.[4] Also, the IP Address used to file Claim 691 was associated with an IP address that Armstrong previously has used on other online platforms.

18. A letter dated December 23, 2025, from the Texas Comptroller of Public Accounts, Unclaimed Property Division, addressed to Individual 1 and Financial Institution 1, was sent to the Dallas Address. This letter requested additional information to process Claim 691.

19. On December 30, 2025, in response to this letter, several materials were uploaded to the Texas Comptroller of Public Accounts Unclaimed Property Division. The materials were uploaded by an individual who was using an IP Address associated with Armstrong. The materials were as follows:

a. A Texas Tax Registration Application Summary form listing the preparer as Robert Armstrong, with a telephone number of ending 4160 and a yahoo email address. This form listed the taxpayer information as Fraudulent Financial Institution 1 and listed the officer information as Robert Armstrong, Armstrong's social security number, telephone number ending 4160, an Outlook email address associated with Armstrong, and a mailing address of the Dallas Address.

b. A Form OS AP07, Appointment by an overseas company of a person authorized to accept service of documents on behalf of the company in respect of a UK establishment, which was submitted on behalf of Financial Institution 1. Robert Armstrong was listed on the form as Global Asset Locator. His address was listed as the Dallas Address, and he was appointed on November 11, 2025. The signature on OS AP07 appears to represent the name "Individual 1."

c. A New Jersey driver's license, in the name of Robert Scott Armstrong, with a license number ending in 10704, issued on June 30, 2025, and expiring on October 1, 2029, with a home address of Armstrong 's Residence.

d. The Bank 1 cashier's check made payable to Financial Institution 1 at the Dallas Address in the amount of $2,806,524.476 with a check date of "Not

[4] The email address that was used was recreated on July 26, 2024, and registered to Robert Armstrong and the registration included Armstrong's date of birth. The email address was associated with Armstrong at the Armstrong Residence.

Valid before November 10, 2025". This is the same check that was returned by Bank 2 to Bank 1.

20. Ultimately, the State of Texas denied Armstrong's claims for the Financial Institution 1 funds.

21. An individual at the Texas Comptroller of Public Accounts Unclaimed Property Division, advised that Robert Armstong continues to call the office inquiring about the status of his claim and wanting to speak to a manager. The Office most recently received a call from Robert Armstrong on September 1, 2026. Armstrong left a message and provided a call back number ending in 6567, which is a number that is subscribed to in the name of one of Armstrong's immediate family members, at Armstrong's Residence.

22. In late April 2026, Financial Institution 1 representatives advised law enforcement officers that Armstrong did not have authorization to act on their behalf in any capacity to recover funds from Bank 1 or to make any claims for escheated funds being held by the State of Texas.

**D. Armstrong's Corporation 1 Fraud**

23. According to PhysicalAddress.com records, Armstrong set up an additional physical address through PhysicalAddress.com at a location in Laguna Beach, California 92651 ("Laguna Beach Address"). I further learned that the Laguna Beach Address was being used as a mail drop for a business controlled by Armstrong, "Corporation 1." PhysicalAddress.com advised that Armstrong had contracted with them to receive mail for "Corporation 1" at the above listed address, and then as part of their service, PhysicalAddress.com forward the mail to the Armstrong's Residence.

24. Between March 19, 2026, and August 28, 2026, PhysicalAddress.com sent five packages, containing approximately 355 envelopes in total, from schools throughout the United States to Armstrong at the Armstrong Residence.

25. A school administrator in St. Paul, Minnesota and a school administrator in San Francisco, California reported that they received invoices from Armstrong at their respective schools. Law enforcement officers reviewed the invoices and saw that they were nearly identical to the ones previously recovered during a prior investigation of Armstrong in 2014.

26. The Corporation 1 invoices had several indicia of fraud. For example, the listed customer service telephone number was a 1-888- number, which in turn routed to a computer-generated voicemail that went unanswered. The invoices listed

an email address that resembled an actual company's business email address, but the address was not associated with any individual's name, and it was associated with Armstrong's own date of birth. The fraudulent invoices used different font sizes in the same product description paragraph and had misspellings in the section regarding the request for payment. The Corporation 1 invoices listed a projected ship date of 3-5 days after receipt of payment.

27. On August 4, 2026, I spoke with an administrator from a Catholic elementary school in Oyster Bay, New York. The administrator confirmed that their school had received an invoice from Corporation 1 on March 3, 2026, for composition workbooks that the school supposedly had ordered. The administrator stated that the school had remitted payment to Corporation 1 and had mailed a check to the Laguna Beach Address on March 10, 2026. The administrator confirmed that this check was actually deposited and the funds cleared on March 23, 2026. The administrator confirmed that no one from the school requested or ordered the books and that no books were ever received after the payment was made. The administrator provided a copy of the false invoice as well as the front and back images of the cancelled check that they had mailed. Upon inspection of the check, I determined that it was deposited into an account at Bank 3.

28. On August 4, 2026, I conducted a search through the State of New Jersey's Department of the Treasury database for Articles of Incorporation, Limited Liability Companies, Limited Partnership registrations or any type of licensing in the State of New Jersey using the name "Corporation 1." I learned that Robert Armstrong registered the entity "Corporation 1" in the State of New Jersey on March 20, 2026, as a Domestic Profit Corporation. He listed himself as the Registered Agent, The First Board of Directors, The Incorporator as well as the Authorized Signatory for the business. He listed the business address as the Armstrong Residence as the main business address.

### 1. Armstrong Has Deposited Proceeds from the False Billing Scheme into a Bank Account

29. Armstrong set up a business bank account at Bank 3 in the name of Corporation 1. Bank 3 is a federally insured "financial institution" within the meaning of Title 18, United States Code, Section 20. According to Bank 3 records the Corporation 1 account was opened on March 20, 2026, as a business advantage fundamentals banking account with the business address listed on the signature card as the Armstrong Residence, with Armstrong listed as the account owner.

30. A further review of the bank records revealed that on March 23, 2026, Armstrong began depositing checks into this account from various schools across the

country. In total, Armstrong deposited 43 victim school checks, each one written for $263 dollars, totaling $11,309. The last of these checks was deposited on July 14, 2026.

31. The review of Bank 3 records also revealed that Armstrong made several payments to a direct mail business that, among other services, prepares invoices at the request of their customers using mail merge software that contains addressee information for prepared bulk mailings.

32. According to the direct mail business records, on at least 5 separate occasions from February 5, 2026, through August 5, 2026, Armstrong had the direct mail business prepare over 36,000 invoices to be sent to victim schools throughout the United States and Canada. Armstrong ordered these invoices electronically through the direct mail business's website and had the direct mail business ship them to the Armstrong Residence.